982 So.2d 1234 (2008)
Asuncion Mendoza LUYAO, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-2195.
District Court of Appeal of Florida, Fourth District.
May 28, 2008.
Rehearing Denied June 27, 2008.
*1235 Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Thomas A. Palmer, Assistant Attorney General, West Palm Beach, for appellee.
PER CURIAM.
Appellant Asuncion Mendoza Luyao appeals a final order of judgment and conviction, raising several evidentiary and procedural issues. In April 2002, Luyao was arrested and charged with one count of continuing criminal enterprise (RICO violation), six counts of trafficking in various amounts oxycodone, aka OxyContin, and six counts of manslaughter arising from patient overdoses. Luyao was a board certified specialist in internal medicine, licensed in the state of Florida and practicing in Port St. Lucie. Following a jury trial, Luyao was convicted of the RICO charge, five counts of trafficking and one count of manslaughter. We write to address two of Luyao's arguments, one relating to jury selection and one relating to the introduction of evidence, and reverse on the basis of the evidentiary issue.
Luyao first raises an issue relating to jury selection. The jury selection process in this case took three days to complete. The judge began a general voir dire of the jury, questioning prospective jurors about their prior knowledge of the case, as to whether they knew any of the prospective witnesses and if they could be fair and impartial. After listening to some of the answers, the trial court held a bench conference and pointed out that a number of the prospective jurors would have to be excused and both sides agreed. At the beginning of the bench conference, Mr. Hirschhorn, Luyao's counsel, waived her presence. Both parties screened out various prospective jurors and these individuals were excused. The trial court took a short break.
When jury selection resumed, the bailiff and the State informed the trial court that Luyao was not in the courtroom and the parties discussed whether her absence prevented them from moving forward. Hirschhorn again waived Luyao's presence, stating she had stepped out to use the restroom. Following this conversation, the trial court recessed briefly, then reconvened. The trial proceeded to call individual jurors in for questioning. There was no further discussion about Luyao and no indication as to whether she was present following the recess.
"The examination and challenge of potential jurors is one of the essential stages of a criminal trial where a defendant's presence is mandated." Matthews v. State, 687 So.2d 908, 909 (Fla. 4th DCA 1997). Luyao argues her absence during the individual voir dire, and the trial court's failure to determine whether the waiver of her presence was knowing, intelligent and voluntary, results in reversible error. See Tarver v. State, 741 So.2d 551, 553 (Fla. 4th DCA 1999).
We disagree, as there was no indication that Luyao had not returned to the courtroom following the trial court's last recess, prior to the individual voir dire. While "[t]he burden is upon the trial court or the State to make the record show that all requirements of due process have been met," requiring the trial court to announce on the record that everyone is present following each individual recess would be an undue burden. Matthews, 687 So.2d at 910 n. 2. There is no reason to believe that she had not returned from her restroom break prior to the individual voir dire. We affirm on this point.
*1236 Luyao next argues the trial court erred in allowing the State to present evidence regarding her legal gambling activity for the purpose of proving her motive in trafficking as there was no connection made between the gambling and the alleged trafficking. We agree with Luyao's argument and reverse for a new trial. "The standard of review for a trial court's ruling on the admissibility of evidence is abuse of discretion." Williams v. State, 967 So.2d 735, 753 (Fla.2007). "The Evidence Code provides that [a]ll relevant evidence is admissible, except as provided by law... `Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.'" Id. (quoting §§ 90.402 and 90.403, Fla. Stat.)
At trial, the State presented the testimony of from Greg Berger, a CPA who analyzed Luyao's billing deposits. Berger analyzed the deposits from 1999 through March of 2002. For the years of 1999-2001, Luyao's deposits were $402,716.00, 440,571.00, and 567,509.00 respectively. Based on the first three months of 2002, Berger testified Luyao's deposits for the 2002 year would likely be $753,000.00.
The State next presented the testimony of Steven McClintock, an individual who worked for the Palm Beach Casino Line, a company operating the Palm Beach Princess. The Palm Beach Princess was a boat that carried individuals three miles offshore so they could legally gamble. Luyao had gone out on the boat numerous times and McClintock testified as to her buy-ins and losses for the years 1999-2002. In 1999, Luyao took forty-eight trips, her buy-ins totaled $20,800 with losses of $2,400. In 2000, Luyao took 102 trips, her buy-ins totaled $50,800 with losses of $1,300. In 2001, Luyao took 137 trips, her buy-ins totaled $94,500 with losses of $30,900. In 2002 (up to March 2002), Luyao took thirty-two trips, her buy-ins totaled $34,400 with losses of $9,200.
Prior to McClintock's testimony, defense counsel made an objection as to relevance, asserting Luyao's gambling activity had nothing to do with the charges in the case, especially as the gambling was legal. The State countered it was important to "[show] motive for the need to continue on increasing the patient load and the money coming in." The trial court concluded the evidence was relevant to prove primary motive and since the gambling was not illegal, its relevance was not outweighed by its prejudicial effect. We hold the trial court's ruling in this regard is error.
We recognize the trial court has a great deal of discretion in ruling on the admissibility of evidence. However, in this case the State failed to draw a sufficient connection between Luyao's gambling and the alleged trafficking of OxyContin. If upon retrial, the State is able to lay a better predicate to show the connection between Luyao's gambling and the alleged trafficking, such evidence would not be precluded from being heard.
In this case, the State presented Berger's testimony as to Luyao's billing deposits for the years 1999-2002, and McClintock's testimony regarding Luyao's gambling losses during the same years. While Berger's testimony indicates increasing billing deposits per year and McClintock's testimony indicates increasing losses per year, the State failed to make a sufficient connection between the two. McClintock's testimony did not indicate excessive gambling losses that would provide a motive for the alleged illegal activity. The State would need to introduce testimony, perhaps from an expert in gambling addiction, to detail the possible effects of steadily increasing gambling activity *1237 and increase in volume of money spent versus money lost that would allow the jury to use this type of evidence to find a motive for the trafficking charges.
We reverse on the basis of this issue and remand for a new trial. We are unpersuaded as to all other issues raised by Luyao in her appeal.
WARNER, POLEN and TAYLOR, JJ., concur.